# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

DAVID O'DROBINAK           )
    Plaintiff,            )
                )
    v.                    )      CAUSE NO.: 2:05-CV-200-PRC
                )
JOANNE B. BARNHART,        )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION,   )
    Defendant.            )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 4], filed by the Plaintiff, David O'Drobinak, on May 19, 2005, and on a Motion for Summary Judgment [DE 27], filed by the Plaintiff on December 14, 2005. The Plaintiff seeks judicial review and reversal of a final decision by the Defendant, the Commissioner of the Social Security Administration ("Commissioner"), in which the Plaintiff was denied Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the following reasons, the Court grants the Plaintiff's request to remand the decision of the Commissioner for further findings.

## PROCEDURAL HISTORY

On October 25, 2000, the Plaintiff filed his application for Disability Insurance Benefits ("DIB"), alleging an onset of disability beginning on or about April 1, 2000. On October 22, 2001, the Plaintiff filed a request for hearing. On June 21, 2002 and October 18, 2002, Administrative Law Judge ("ALJ") Dennis Kramer held hearings. On March 14, 2003[1], the ALJ issued his decision

---

[1] While the ALJ's decision is stamped and dated March 14, 2002, the ALJ held hearing on June 21, 2002 and October 18, 2002 and the Plaintiff filed his Request for Reconsideration on April 25, 2003. Accordingly, the Court finds, in agreement with both the Plaintiff and the Defendant's recitation of the facts, that the ALJ's opinion was misdated and

concluding that the Plaintiff was not disabled within the meaning of the Social Security Act because the Plaintiff retained the residual functional capacity ("RFC") to perform at least sedentary work. In his decision, the ALJ made the following findings:

(1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

(2)     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

(3)     The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(b).

(4)     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)     The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

(6)     The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. § 404.1527).

(7)     The claimant['s] [RFC] is as stated in the body of the decision.

(8)     The claimant is a "younger individual" (20 C.F.R. § 404.1563).

(9)     The claimant has "more than a high school (or high school equivalent) education" (20 C.F.R. § 404.1564).

must have been issued on March 14, 2003.

(10)     Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as cashier, hand packer and mechanical assembler.

(11)     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(f)).

(R. at 22-23.) The Plaintiff filed a Request for Review, which the Appeals Council denied on March 25, 2005, leaving the ALJ's decision as the final decision of the Commissioner.

## FACTS

### A.  Background Information

At the time of the October 18, 2002 hearing, the Plaintiff was forty-seven (47) years old. The Plaintiff alleges that he became disabled on April 1, 2000, due to degenerative disease in the spine and hips, arthritis in the neck, and depression.  The Plaintiff graduated from high school and completed one and a half years of college.  He has past relevant work experience as a forklift driver, laboratory technician, maintenance worker, and delivery driver.  The Plaintiff has not worked since March 15, 2000, when he was fired.  He applied for and received unemployment compensation for six (6) months.

### B.  Medical Evidence

On November 22, 1999, James N. Dreyfus, M.D., reported that he had treated the Plaintiff since 1994 for cervical and lumbosacral osteoarthritis associated with disc disease.  Dr. Dreyfus opined that physical labor, such as significant lifting, carrying, and twisting, aggravated the

Plaintiff's arthritis. According to Dr. Dreyfus, the Plaintiff "is able to function doing more sedentary work." (R. at 184.)

On September 27, 2000, Dr. Dreyfus reported that the Plaintiff sought permission to participate in an agility test for the Valparaiso Fire Department. Dr. Dreyfus stated that he believed that this was "an unusual request" given that he had been treating the Plaintiff for years for chronic neck and lower back problems. (R. at 176.) Dr. Dreyfus returned the form without signing it and also informed the Plaintiff that "it was highly unlikely that another physician would clear him for such work once it was known what medications he chronically took." (R. at 176.) Dr. Dreyfus further noted that the Plaintiff had complained of chronic pain for the last ten (10) years.

In November 2000, Dr. Dreyfus reported that Magnetic Resonance Imaging (MRI) scans of the Plaintiff's neck and back revealed a mild degree of degenerative disc disease with multiple levels of mildly bulging discs and osteoarthritis, but no definite stenosis.

On January 12, 2001, Teofilo Bautista, M.D., examined the Plaintiff, summarized his past medical history, and assessed his current functioning. Dr. Bautista reported the following:

> The [Plaintiff] can kneel and squat. Bending limited. He claims standing is a comfortable position. He got on and off the exam table with no problem. He can walk about two [2] miles. No limping gait was observed. He can climb [twelve] 12 steps. He has no problem standing. He can sit only for one half hour before repositioning. He can drive with no distant limitation. He can lift from the waistline level about [fifteen] 15 pounds and can carry this within [seventy] 70 feet. He lives alone. He does all his household chores at his own pace. He is independent with his personal care.

(R. at 139.) Dr. Bautista also reported that the Plaintiff had normal strength, reflexes, and sensory responses.

On February 1, 2001, Craig Nordstrom, Psy.D., a clinical psychologist, conducted a mental status examination of the Plaintiff.  The Plaintiff told Dr. Nordstrom that he took Prozac, which was prescribed by his primary care physician and that he was not currently in counseling or under the care of a psychiatrist.  The Plaintiff informed Dr. Nordstrom that he knew of no family history of psychiatric illness.  The Plaintiff reported that he "occasionally fe[lt] depressed", especially when in pain.  (R. at 143.)  The Plaintiff reported "some insomnia" due both to depression and pain.  (R. at 143.)  However, the Plaintiff denied all other vegetative signs of depression as well as suicidal ideation, plan, or intent.  Dr. Nordstrom summarized that the Plaintiff had a depressed mood related to illness and chronic pain and accordingly diagnosed the Plaintiff as suffering from an adjustment disorder with depressed mood.

On March 15, 2001, Dr. J. Pressner, Ph.D., a State Agency psychologist, reviewed the records of Dr. Nordstrom and concluded that the Plaintiff did not suffer from a severe mental impairment.

In March, 2001, Dr. J. Sands, M.D., a State Agency physician, reviewed the Plaintiff's medical records and assessed his RFC.  Dr. Sands noted that the Plaintiff had a history of back and hip pain.  Dr. Sands reported the following observations regarding the Plaintiff's physical condition: his gait was normal, he could walk on his heels and toes without difficulty, his muscle tone and strength were intact, and he had no motor, sensory, or reflex loss.  Dr. Sands noted that MRI scans showed degenerative joint disease and bulging discs in the neck and back.  He opined that the Plaintiff was able to lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently, stand and walk for six (6) hours, sit for six (6) hours, push and pull without limitation, and occasionally stoop, kneel, crouch, crawl, and climb.

On August 26, 2002, Dr. Suresh Mahawar, M.D., a consulting physician, examined the Plaintiff and assessed his RFC. Dr. Mahawar found that the Plaintiff had no anatomic abnormalities of the cervical or thoracic spine. He further found that the Plaintiff was able to raise his leg seventy (70) degrees (ninety (90) degrees is normal). Dr. Mahawar diagnosed the Plaintiff with chronic low back pain with hips and leg pain as well as chronic neck pain radiating to the arms with numbness. He also diagnosed the Plaintiff with a history of depression and ulcers. Dr. Mahawar assessed the Plaintiff's functional capacity and concluded that he could lift up to twenty (20) pounds occasionally and ten (10) pounds frequently; stand and walk for two (2) hours in an eight (8) hour workday; sit without limitation; push and pull with mild limitations; and occasionally climb, balance, kneel, crouch, crawl, and stoop. Dr. Mahawar recommended that the Plaintiff avoid environmental exposure to temperature extremes, vibration, humidity, wetness, hazards, fumes, odors, chemicals, and gases.

Finally, on November 18, 2002, Dr. Dreyfus reported that the Plaintiff's pain complaints had been partially controlled with medication over the years. Dr. Dreyfus concluded that he did not believe that the Plaintiff's pain would improve any further and he opined that the Plaintiff's pain interfered with his ability to do significant manual work.

### C. Plaintiff's Testimony

At the October 18, 2002 hearing, the Plaintiff testified that he last worked on March 15, 2000 as a laboratory technician in a factory. Before that, he testified that he previously worked as a forklift operator, a maintenance worker, and a delivery driver. The Plaintiff testified that he could not perform his previous work as a laboratory technician because it required "too much walking around and [forty] 40 hours a week." (R. at 287.)

The Plaintiff testified that he could do the following: walk two to three blocks, but he would "feel it the next day"; stand for a half hour before having to sit down, but having to "deal with pain"; sit for at least one hour; lift and/or carry twenty to thirty pounds, at most, and ten pounds frequently; climb ladders and stairs; kneel and squat, but only "a little bit"; and reach above his head.  (R. at 280-85.)  Since he last worked, the Plaintiff testified that he experiences "ringing" in his ears, hears voices, and has "thoughts of suicide" about once a week  (R. at 279-80; 289-90.)

Finally, the Plaintiff testified that he lives alone in a one-and-a-half story, three-bedroom home, in which he does all of the housework, cleaning, cooking, and laundry.  He further testified that he drives; goes grocery shopping and can lift the groceries; and attends social events about ten (10) times a month including movies, dining out, and visiting with family.

### D.  Vocational Expert's Testimony

At the October 18, 2002 hearing, Thomas Groesik testified as a vocational expert ("VE"). The VE testified that the Plaintiff's past job as a laboratory technician at a soap manufacturer was semi-skilled and required light exertion; his job as a forklift driver was semi-skilled and required medium exertion; his job as a maintenance worker was unskilled and required light exertion; and his job as a delivery driver was unskilled and required light exertion.

The ALJ posed a series of hypotheticals to the VE.  In the first hypothetical, the ALJ instructed the VE to consider an individual with the same age, education, and past work experience

as the Plaintiff along with an RFC as noted in Exhibit 4F.[2]  The VE responded that the individual could perform his or her past work as a laboratory technician, delivery driver, and maintenance worker.

In the second hypothetical, the ALJ instructed the VE to assume the same individual but with "the other RFC in the file" at Exhibit 11F.[3]  (R. at 292.)  The VE responded that the individual in the second hypothetical would not be able to do his or her past relevant work because of the limitation of being on his or her feet.  However, the VE testified that the individual in the second hypothetical would be able to perform other work, such as less than light but more than sedentary work including employment as a cashier, hand packer, and mechanical assembler.

In the third hypothetical, the ALJ instructed the VE to assume the same individual with the same RFC as in the first two hypotheticals, but with a Global Assessment of Mental Functioning (GAF) of 70.[4]  The VE testified that there would no jobs that the individual in the third hypothetical could perform.

In the fourth hypothetical, the ALJ instructed the VE to assume an individual with the same RFC but excluding laying down and considering the following limitations:

---

[2]Exhibit 4F contains the physical RFC assessment completed by Dr. Sands, a State Agency physician, in March 2001.  Dr. Sands' RFC included the following limitations: lift twenty (20) pounds occasionally and ten (10) pounds frequently; stand, walk, and sit for six (6) hours in a workday; unlimited ability to push and pull; and occasional postural limitations in all areas.  (R. at 147-54.)

[3]Exhibit is 11F "Medical Source Statement of Ability To Do Work-Related Activities (Physical)", dated August 26, 2002. (R. at 217-20.)  The physician who conducted this RFC found the following limitations:  lift twenty (20) pounds occasionally and ten (10) pounds frequently; stand and/or walk for two (2) hours in a workday; limited pushing and pulling in the upper and lower extremities (mild); occasional postural limitations in all areas; and limited by temperature extremes, vibration, humidity/wetness, and hazards as well as fumes, odors, chemicals, and gases.

[4]With regard to the third hypothetical, the transcript of the October 18, 2002 hearing merely recorded the following: "Q[uestion] Hypothetical three.  If you add to hypotheticals one and two, [inaudible]?  A[nswer] No." (R. at 293.)  In his opening brief, the Plaintiff assumes that the "inaudible" section includes the limitation of a GAF of 70 and that the VE's response of "no" indicates that there were no jobs for the individual in the third hypothetical.

> ... can walk two [2] to three [3] blocks and then sit for one [1] hour,
> stand one half-hour, then sit for one half-hour,  sit for one half-hour,
> then stand for one half-hour, occasional lifting of twenty [20] to thirty
> [30] pounds, frequent lifting ten [10] pounds, can occasionally climb
> ladders, stairs, kneel, squat, reach arms above the hand, uncertain
> about bending and touching toes, can button buttons and zip zippers,
> and pick up coins from a table.

(R. at 293.)  The VE testified that the individual in this hypothetical would not be able to perform any of the Plaintiff's past relevant work, but would be able to perform jobs of which the VE previously testified, i.e. employment as a cashier, hand packer, and mechanical assembler.

Finally, in the fifth hypothetical, the ALJ instructed the VE to assume the same limitations as in the fourth hypothetical but adding that the individual has to lay down for two (2) hours in a workday.  The VE testified that the individual in the fifth hypothetical would not be "able to perform any of [the Plaintiff's] past relevant work or any other work that [the Plaintiff] might otherwise be qualified to perform."  (R. at 295.)

### E.  ALJ's Opinion

On March 14, 2003, the ALJ issued a decision holding that the Plaintiff is not entitled to a period of disability or DIB under the Social Security Act.  The ALJ found that although the Plaintiff suffered from "an impairment or combination of impairments" considered severe under the Regulations, the Plaintiff's allegations regarding his limitations are "not totally credible." (R. at 22.)  Further, the ALJ found that the Plaintiff's RFC "is as stated in the body of the decision", in which the ALJ highlighted Exhibits 11F and 4F.  (R. at 22.)  In conclusion, the ALJ

determined that the Plaintiff could perform "a significant number of jobs in the national economy" including work as a cashier, hand packer, and mechanical assembler.  (R. at 23.)

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and whether he applied the correct legal standard. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).  If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  To be found disabled, the claimant's impairment must not only prevent him or her from doing previous work, but considering age, education, and work experience, it must also prevent him or her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy.  42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e), (f) & 416.920(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).  The Seventh Circuit has summarized the sequence as follows:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past relevant work; and (5) whether the claimant is capable of performing work in the national economy.  Under the five-part sequential evaluation process, [a]n affirmative answer leads either to the next step, or, on Step 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled.  If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.

*Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001) (citations and internal quotations omitted) (alterations in original); *see also* 20 C.F.R. §§ 404.1520(a)(4)(I)-(iv) & 416.920(a)(4)(I)-(iv); *Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).  At the fourth and fifth steps, the ALJ must

consider an assessment of the claimant's RFC.  "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations."  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  The ALJ must assess the RFC based on all the relevant evidence of record.  *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)).  The claimant bears the burden of proving steps one through four, *see Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995), whereas the burden at step five is on the ALJ, *see Zurawski*, 245 F.3d at 886.

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence.  *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits."  *Zurawski*, 245 F.3d at 888.  The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review."  *Young*, 362 F.3d at 995 (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

The Plaintiff alleges that the ALJ erred by: (1) failing to address how the Plaintiff's GAF score of 70 affected his ability to work, or, in the alternative, not making a proper RFC finding by failing to analyze how the Plaintiff's pain affected his ability to work and failing to do a function-by-function analysis; and (2) failing to properly analyze the Plaintiff's pain by (a) not comparing the

Plaintiff's pain with medical evidence, (b) not considering the State Agency doctor's opinion providing that the Plaintiff's allegations were credible, and (c) not addressing the conflict between the physicians' opinions regarding the Plaintiff's ability to bend.

Because the Court finds that the ALJ's failure to properly articulate, with regard to the RFC, the effect of the Plaintiff's mental and physical impairments when considered together, the Court need not address the Plaintiff's other arguments.

The Plaintiff contends that the ALJ insufficiently developed his opinion by failing to address the Plaintiff's GAF score of 70.  On the contrary, the ALJ did address the underlying mental condition that effects the Plaintiff's abilities.  After a discussion of the evidence of his mental condition, the ALJ concluded that "the claimant's alleged depression is a 'non severe' impairment." (R. at 17.)  The Plaintiff does not persuade the Court that the ALJ needed to address specifically the GAF score of 70.  Rather, by addressing the underlying condition, the ALJ has fulfilled his obligation to sufficiently address that impairment.

However, despite the ALJ's independent determination of the Plaintiff's mental condition as "non severe", the question remains whether the ALJ considered both the Plaintiff's mental and physical impairments together when the ALJ concluded that he "was not under a 'disability' as defined by the Social Security Act." (R. at 23.)  In his decision, the ALJ points out that "if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis." (R. at 16.)  In his findings, the ALJ states that he has "carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments." (R. at 23.)  However, on the face of the ALJ's decision, it is unclear whether the ALJ

considered the Plaintiff's physical and mental impairments together or whether the ALJ only considered the Plaintiff's mental and physical impairments separately.

"Residual functional capacity", or RFC, is a measure of what an individual can do despite the limitations imposed by his or her impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The RFC is an issue at steps 4 and 5 of the sequential evaluation process. "The RFC assessment [requires] a function-by-function assessment based upon *all of the relevant evidence* of an individual's ability to do work-related activities." SSR 96-8P at *3 (emphasis added). To ensure a valid RFC determination, the ALJ must follow SSR 96-8P, which provides that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work related abilities on a function-by-function basis." *Id* at *1. "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " *Id.* at *5. "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." *Id.* at *5.

In his decision, the ALJ finds that the Plaintiff's alleged mental impairment is "non severe." (R. at 17.) Therefore, the Plaintiff's mental condition, taken by itself, does not entitle him to benefits because it fails the second part of the test. *Zurawski*, 245 F.3rd at 885-86. The ALJ also states that the Plaintiff's "allegations regarding his limitations are not totally credible." (R. at 22.) The ALJ goes on to assert that "[t]he [Plaintiff's] [sic] [RFC] is as stated in the body of the decision." (R. at 22.) In the body of his decision, the ALJ first addresses the Plaintiff's mental

impairment, finding it "non severe" and stating that "it does not have more than a minimal affect [sic] on the [Plaintiff's] ability to perform basic work activities."  (R. at 17.)  The ALJ then turns to evaluating the Plaintiff's RFC.  However, the ALJ does not give a specific value to this RFC. Rather, the ALJ considers the Plaintiff's limitations and what those limitations allow him to do.  The ALJ notes that he asked questions of the VE in order to determine what jobs a person with the Plaintiff's limitations could perform.

The ALJ "asked the [VE] to assume a hypothetical individual that is the same age, education, past work experience and the same RFC as Exhibit 4F."  (R. at 20.)  The VE replied that this person could perform jobs of the types formerly held by the Plaintiff.  The ALJ next asked the VE to assume the same person but "with the same RFC as Exhibit 11F."  (R. at 20.)  The VE replied that while this person could not perform jobs similar to those previously held by the Plaintiff, there would be other jobs available to him in the national economy.  Exhibits 4F and 11F both contain RFCs that physicians assigned to the Plaintiff, but both of these RFCs only include the Plaintiff's physical impairments.  Exhibit 4F is entitled "Physical Residual Functional Capacity Assessment." (R. at 147.)  Exhibit 11F is entitled "Medical Source Statement of Ability to do Work-Related Activities (Physical)."  (R. at 217.)  Therefore, if the ALJ relied only on these RFC scores and the statements of the VE and did not consider the Plaintiff's mental impairments together with considering the Plaintiff's physical impairments, the ALJ erred.

Furthermore, in the third hypothetical to the VE, the ALJ asked the VE to "assume the same RFC as hypothetical 1 and 2 and a GAF of 70."[5]  (R. at 21.)  The VE replied that there would be no jobs available, which means that the Plaintiff would be entitled to benefits.  This conclusion by the

---

[5]*See supra*, note 4.

15

VE implies that when considering both the Plaintiff's mental and physical impairments, a conclusion different from the ALJ's ultimate determination may result.

The Court finds that the ALJ's decision failed to sufficiently articulate his consideration of the Plaintiff's physical and mental impairments together when determining the RFC. In turn, reviewing courts, including this Court, are unable to discern whether the ALJ determined the Plaintiff's RFC considering both his mental and physical impairments or if he only considered his physical impairments. The ALJ failed to articulate how the mental impairment(s) factored into his finding of the Plaintiff's RFC. In fact, the Court finds that the ALJ's decision is susceptible to a reading that the ALJ did not include the Plaintiff's mental impairment(s) when he determined the Plaintiff's RFC. As a result, the ALJ leaves his decision and reasoning open to speculation: (1) perhaps the ALJ included the mental impairment, but did not given it much weight because it was not credible; (2) perhaps the ALJ included the mental impairment and found that even considering the Plaintiff's mental and physical impairments together, the Plaintiff was still capable of performing work in the national economy; or (3) perhaps the ALJ considered the Plaintiff's mental and physical impairments independently and found that neither his mental impairment nor his physical impairments, when considered independently, entitled the Plaintiff to benefits. If the latter, the possibility remains that when the Plaintiff's physical and mental impairments are properly considered together, the aggregate effect is that the Plaintiff may be entitled to benefits.[6] Furthermore, the ALJ implemented his erroneous RFC in determining that the Plaintiff was capable of performing work in the national economy and therefore that he was not entitled to benefits

---

[6]The Court notes that even if the ALJ failed to consider the Plaintiff's mental and physical impairments together, this does not mean that when the ALJ properly considers them together, the ALJ will find that the Plaintiff is entitled to benefits. Rather, the Court illustrates that it is *possible* that the ALJ will so find. The Court expresses no opinion regarding the likelihood or appropriateness of such a finding.

because he failed the fifth part of the test. *Zurawski*, 245 F.3d 885-86. Accordingly, the Court finds that evidence in the record exists that the ALJ failed to consider the Plaintiff's mental and physical impairments together in determining the Plaintiff's RFC.

The Court neither endorses a finding that the Plaintiff may be disabled nor does the Court suggest that the ALJ did not, in fact, take into account both the Plaintiff's mental and physical impairments. Rather, the Court points out that the ALJ's decision failed to articulate that the ALJ did examine both types of impairments. Therefore, the Court finds that the decision is deficient because it does not provide an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's findings and afford a claimant meaningful judicial review." *Young*, 362 F.3d at 995 (quoting *Scott*, 297 F.3d at 595)).

## CONCLUSION

Accordingly, based on the foregoing, the Court **GRANTS** the Plaintiff's Motion for Summary Judgment [DE 27] and **REMANDS** this matter for further administrative proceedings consistent with this Order.

SO ORDERED this 18th day of September, 2006.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record